# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**RON KIRK THOMPSON (#111262)**                                    **CIVIL ACTION**

**VERSUS**

**JONATHAN R. ROUNDTREE, ET AL.**                                  **NO. 09-0803-BAJ-DLD**

## NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**RON KIRK THOMPSON (#111262)**                                      **CIVIL ACTION**

**VERSUS**

**JONATHAN R. ROUNDTREE, ET AL.**                                   **NO. 09-0803-BAJ-DLD**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter comes before the Court on the defendants' Motions for Summary Judgment, rec.doc.nos. 85, 100 and 107. These motions are opposed.

The pro se plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Dr. Jonathan R. Roundtree, Ass't. Warden Kevin Benjamin, Capt. Christine H. Lacour, Sgt. Montrell Robinson, Sgt. Mary Dodge, Nurse Tremika Brown, Nurse Sharon Dunbar, Dr. Guy Williams, Major Joseph Hooker, Sgt. Leminda Lackie, Lt. Teraena Purpera, N. Alisha Hughes, Capt. Robert Hayes, Sgt. Richard McKey, Ass't. Warden Orville Lamartinier, Classification Officer Johnny B. Joseph, Lt. Melvin McDowell, Sgt. Aaron Hicks, Sgt. Parnell Davis, Sgt. David Brown, Sgt. Anthony Johnson, Sr., Sgt. Melissa Gooden, and unidentified "John Doe" and "Jane Doe" defendants employed at LSP, alleging that the defendants have violated his constitutional rights, principally through deliberate indifference to his serious medical needs. In addition, the plaintiff complains that the defendants have engaged in a conspiracy to have him killed, have forged his medical records, and have tampered with his legal mail, all in alleged retaliation for administrative grievances filed by the plaintiff against prison officials.[1]

---

[1] Attempts by the United States Marshal's Office to serve defendants Parnell Davis and Anthony Johnson, Sr., have proven unsuccessful because service of process has not been accepted on behalf of these defendants by the Louisiana Department of Public Safety and Corrections. Specifically, a representative of the Department has represented that defendant Parnell Davis is "unknown" to the Department, see rec.doc.no. 60, and that defendant Johnson is no longer employed by the Department, see rec.doc.no. 88. In addition, attempts to serve defendant Johnson at the location provided as his last known address have also proved unsuccessful. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff to serve a defendant within 120

The defendants move for summary judgment, relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of the plaintiff's pertinent administrative proceedings, certified copies of the plaintiff's pertinent medical records, a memorandum dated November 19, 2008, authored by Sharon Dunbar (relative to tuberculosis testing for certain inmates confined at LSP), a Physician's Order dated November 20, 2008, signed by defendant Jonathan Roundtree (relative to same), and the affidavits of Tara Bonnette and defendants Sharon Dunbar, Jonathan Roundtree, Joseph Hooker, Kevin Benjamin, Christine Lacour, Mari Dodge and Tremika Brown.

Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Celotex Corporation v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. Anderson, supra. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, supra. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. Little, supra, 37 F.3d at 1076. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. International

---

days of commencement of an action is cause for dismissal of that defendant from the proceedings. It is appropriate, therefore, that the plaintiff's claims asserted against these defendants be dismissed, without prejudice, for failure of the plaintiff to timely effect service upon them.

Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257 (5th Cir. 1994), cert. denied, 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

In a rambling and disjointed Complaint, the plaintiff alleges that on November 24, 2008, defendant Kevin Benjamin directed that the plaintiff be escorted to the prison infirmary and forced to undergo diagnostic testing. In response to this directive, defendant Hooker escorted the plaintiff to the infirmary, but upon arrival, the plaintiff refused to undergo the referenced tests, and signed a refusal form for that purpose. Approximately a week later, defendant Sharon Dunbar approached the plaintiff and urged the plaintiff to consent to the referenced tests, at which time the plaintiff reluctantly agreed. The plaintiff alleges that the purpose of these tests was to look for traces of poisons which he believes that the defendants were secretly putting into his food or medicine. Specifically, the plaintiff alleges that on several occasions, defendant Sgt. Montrell Robinson has put drugs or foreign substances into the plaintiff's food in order to cause the plaintiff harm, and has encouraged co-inmate orderlies to do the same. As proof of this assertion, the plaintiff alleges that he suffered severe chest pains on several occasions after being served food on defendant Robinson's shift. The plaintiff also complains that defendant Robinson has disseminated rumors within the prison that the plaintiff is a "rat", thereby placing the plaintiff in danger of harm from other inmates.

In addition to the foregoing, the plaintiff alleges that on several occasions on unspecified dates, defendant Dr. Williams has called the plaintiff to the infirmary and each time Dr. Williams has requested blood and urine samples and has ordered x-rays without explanation. Although Dr. Williams allegedly observed on those occasions "how swollen" both of the plaintiff's kidneys were, the defendant failed to prescribe any medication or refer the plaintiff to the hospital ward for treatment or surgery. Defendant Dr. Moody has also repeatedly requested blood and urine samples from the plaintiff without explanation.

On April 21, 2009, the plaintiff requested emergency medical attention for complaints of chest pain and was escorted to the prison infirmary. When the results of x-rays and an EKG test were

negative, defendant Dr. Roundtree instructed defendant Christine Lacour to inject the plaintiff with unknown medications in both hips, which the plaintiff believes were "lethal and harmful drugs". According to the plaintiff, he began to suffer immediate severe burning, cramps and dizziness, and he allegedly passed out upon return to his cell. The next morning, he awoke to find that his kidneys were "severely swollen" and that he had knot in his abdomen "about the size of a grapefruit". The plaintiff further alleges that the referenced medications were administered upon the orders of defendant Kevin Benjamin, who the plaintiff believes ordered Dr. Roundtree to kill the plaintiff. In addition, the plaintiff believes that the actions of the defendants, all undertaken at the request of defendant Benjamin, are in direct retaliation for grievances which the plaintiff has filed against security officers and health care providers at LSP.

Finally, on May 17, 2009, the plaintiff requested emergency medical attention and was escorted to the infirmary by defendant Robert Hayes with complaints of "intense pain and swelling in both kidneys". Upon arrival, Dr. Roundtree ordered x-rays, which again were negative. Defendant Roundtree then had the plaintiff lie on a bed to receive I.V. fluids. The plaintiff complains that defendant Mary Dodge then administered a medication though the plaintiff's I.V. line which resulted in severe complications, including causing the plaintiff to dry up on the inside, causing his entire body to "lock up", causing a "serious infection", causing his body to turn "green, black and blue", and making it very difficult for him to breathe. He believes that this medication was part of the defendants' ongoing attempt to kill him.

In addition to the foregoing, the plaintiff complains (1) that all of the defendants have forged portions of his medical records, (2) that defendant Tremika Brown issued the plaintiff a false disciplinary report, (3) that defendant Purpera has subjected the plaintiff to threats and verbal abuse, has attempted to have the plaintiff ingest suspicious medication and, on one occasion, squeezed the plaintiff's kidneys so hard as to cause pain, (4) that defendant Hughes aided and abetted in the alleged conspiracy to attempt to commit murder, (5) that defendant McKey has acted to prevent the plaintiff from obtaining exercise, (6) that defendant Lamartinier has acted to prevent the plaintiff from

being reclassified to a less onerous housing assignment, and (6) that defendants John Joseph, Trish Foster, and other mail room employees have tampered with the plaintiff's legal mail and have delayed the progress of the plaintiff's administrative remedy proceedings. According to the plaintiff, defendant Benjamin has also attempted to cause the plaintiff harm by placing co-inmate enemies on the plaintiff's tier and has instructed security officers to withhold sick call forms from the plaintiff and to delay or tamper with the plaintiff's legal mail.

In response to the plaintiff's allegations, the defendants first assert that the plaintiff has failed to exhaust administrative remedies, as mandated by to 42 U.S.C. § 1997e, relative to certain of his claims. Pursuant to this statute, the plaintiff was required to exhaust administrative remedies available to him prior to commencement of a lawsuit in federal court relative to prison conditions. This provision is mandatory and allows for no exceptions.

From a review of the plaintiff's administrative grievance, it appears that the defendants' motion is well-taken. In his original Complaint, the plaintiff makes reference to a single grievance, No. LSP-2009-1802, as being the grievance which he filed wherein he asserted the claims which he now pursues in this litigation. A review of this grievance reflects that the plaintiff complains therein only of actions taken by defendants Richard Roundtree, Kevin Benjamin, Joseph Hooker, Sharon Dunbar, Tremika Brown, Christine Lacour and Mary Dodge. There is no mention whatever in the grievance of defendants Montrell Robinson, Guy Williams, Leminda Lackie, Teraena Purpera, N. Alisha Hughes, Robert Hayes, Richard McKey, Orville Lamartinier, John B. Joseph, Trish Foster, Melvin McDowell, Aaron Hicks, David Brown or Melissa Gooden. Nor is there any reference to claims that the defendants have subjected him to threats and verbal abuse, disseminated rumors that he is a "rat", attempted to subject him to harm at the hands of co-inmates, denied him access to sick call forms, prevented him from engaging in outside exercise, prevented him from being reclassified to a less onerous housing assignment, tampered with his legal mail, interfered with his

access to the courts, or delayed the progress of his administrative claims.² Accordingly, it is clear that the plaintiff's claims relative to these defendants and to these issues have not been administratively exhausted and are subject to dismissal for this reason.³

The remaining defendants next seek dismissal of the plaintiff's claims asserted against them in their official capacities. In this regard, while the defendants are correct that the Eleventh Amendment to the United States Constitution prohibits the bringing of a lawsuit in federal court seeking monetary damages against persons acting as official representatives of a state or its agencies, see Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), the plaintiff makes

---

² The plaintiff asserts that he has filed one or more additional administrative grievances, but he complains that prison officials have deterred him from filing same and have never responded thereto. Notwithstanding, the plaintiff may not simply rely upon the alleged failure of prison officials to address his grievances and argue that, as a result of such failure, he may be deemed to have exhausted administrative remedies. To the contrary, "[t]he failure of prison officials to respond to a grievance does not constitute a valid excuse for failure to exhaust administrative remedies." Johnson v. Cheney, 2008 WL 534606 (N.D. Tex, Feb.8, 2008). See also Curry v. Alexandre, 2006 WL 2547062 (W.D. La., June 19, 2006) ("a plaintiff cannot be excused from the PLRA's mandatory exhaustion requirements based on allegations that his grievance(s) was ignored."). Indeed, the administrative process allows an inmate to proceed to the next level of the administrative process when he fails to receive a timely response at the first level, and there is no suggestion that the plaintiff did so in the instant case. Further, the plaintiff has not provided this Court with copies of the referenced grievance(s), and in the Court's view, it was incumbent upon the plaintiff to retain copies of his grievances for his records, and it was incumbent upon him, upon receiving no timely response to his grievances, to either re-file same or to proceed unilaterally to the second step of the administrative process.

³ Although the plaintiff asserted the claim in his administrative grievance that "some one has been putting something in my food," he failed to identify the person or persons who had allegedly engaged in this activity. In Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004), the Court made clear that the primary purpose of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'" Id. In other words, "the grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit." Id. Accordingly, to be deemed adequate, an inmate's administrative grievance must be sufficiently specific, both in specifying a complaint and, where appropriate, in identifying the person or persons responsible for events complained of. Johnson v. Johnson, supra (holding that, as a practical matter, in order to provide prison officials an opportunity to address a problem, a grievance should ordinarily "identify individuals who are connected with the problem."). In the plaintiff's administrative grievance in this case, he failed to identify the person who he believed was putting something in his food and so, in the Court's view, he failed to sufficiently identify the wrongdoer and provide prison officials with an opportunity to address this issue. Accordingly, although the plaintiff's Complaint identifies defendant Montrell Robinson as the person who allegedly engaged in this activity, the naming of this person in the Complaint does not excuse the plaintiff's failure to properly exhaust this issue through the administrative process.

clear in his Complaint that he is naming the defendants only in their "personal or individual capacity". Accordingly, inasmuch as the plaintiff's claim against state officials in their individual capacities, seeking monetary damages and seeking to impose individual liability for actions taken by them under color of state law, is not treated as a prohibited suit against the state or its agencies, Hafer v. Melo, supra, the Court need not address this aspect of the defendants' motions.

The defendants' motions next assert the defense of qualified immunity. Specifically, the defendants contend that the plaintiff has failed to make sufficient allegations of conduct on their part which rises to the level of a violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. Hale v. Townley, 45 F.3d 914 (5th Cir. 1995). As enunciated in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights. Second, the district court looks to whether the rights allegedly violated were clearly established. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. Id. In the instant case, the defendants assert that the plaintiff's claim fails in the first instance because the plaintiff has failed to allege facts in the Complaint which would support a finding that the defendants participated in any violation of the plaintiff's constitutional rights.[4]

Undertaking the Saucier analysis, the Court concludes that the defendants' motions are well-taken, and that they are entitled to qualified immunity in connection with the plaintiff's claims asserted

---

[4] The United States Supreme Court has recently held that rigid chronological adherence to the Saucier two-step methodology is no longer mandatory. Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Although the Saucier methodology will be "often beneficial", the Callahan Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.

against them.

First, the plaintiff's claim asserted against defendants Joseph Hooker and Sharon Dunbar is clearly not one of constitutional dimension. All that the plaintiff alleges with regard to these defendants is that, pursuant to the directive of defendant Kevin Benjamin, Joseph Hooker escorted the plaintiff to the prison infirmary on November 24, 2008, for diagnostic testing. After the plaintiff refused to undergo the tests on that date, he was thereafter approached by defendant Sharon Dunbar, approximately a week later, and was persuaded to consent to the referenced tests. There is no suggestion, however, that either of these defendants took any action to cause the plaintiff harm or that the tests themselves were unduly invasive or painful. To the contrary, the defendants have provided evidence reflecting that in November, 2008, health care officials at LSP were notified that an inmate previously confined at the prison had died from complications associated with tuberculosis. Inasmuch as tuberculosis is a contagious disease, prison officials undertook at that time to begin performing tests on inmates and security officers (184 in number) who had potentially been exposed to the deceased inmate. Inasmuch as the defendants believed that the plaintiff had potentially been exposed to the referenced co-inmate in September, 2008, during a visit to the LSP nursing unit, defendant Kevin Benjamin ordered that the plaintiff be escorted to the prison infirmary for diagnostic testing. Defendant Joseph Hooker complied with this directive on November 23, 2008, by escorting the plaintiff to the infirmary. When the plaintiff refused testing on that date, defendant Benjamin was notified, and he directed that the plaintiff be returned to the infirmary. This occurred on December 1, 2008, and defendant Sharon Dunbar spoke with the plaintiff at that time and was able to obtain his consent to the testing. The Court sees no basis for liability in these actions taken by defendants Hooker and Dunbar.

The plaintiff next complains, as to defendant Tremika Brown, that this defendant has forged the plaintiff's medical records and, on an unspecified date, issued the plaintiff a wrongful disciplinary report. Accepting these assertions as true, the plaintiff's allegations do not state claims of constitutional dimension relative to this defendant. First, a claim of forgery is not cognizable under

§ 1983. To state a claim for relief in an action brought under § 1983, the plaintiff must allege and show that he has been deprived of a right secured by the Constitution or laws of the United States. The plaintiff's claim regarding the alleged alteration of his medical records does meet this standard and so is not actionable herein. See Thompson v. Dretke, 2006 WL 1207890 (E.D. Tex., May 4, 2006) (holding that "if forged records ... were placed in [the plaintiff's] file, this could be a violation of prison regulations or even state law, but there is no showing that it is a violation of any rights protected by the Constitution or laws of the United States."). See also Hicks v. Margie, 2008 WL 4566995 (W.D. La., Sept. 19, 2008) ("To the extent that Plaintiff seeks to hold Defendants liable for ... fraud, forgery, or deception, such claims are not cognizable under § 1983.").[5] Second, under § 1983, the plaintiff's allegation that defendant Brown charged him with a false disciplinary report, accusing the plaintiff of actions which he did not commit, does not, without more, amount to a viable claim of the denial of due process. Collins v. King, 743 F.2d 248 (5th Cir. 1984). Further, the United States Supreme Court has held that prison disciplinary proceedings fail to implicate any constitutionally protected liberty interest unless the resulting punishment has subjected the inmate to an atypical and significant deprivation (evaluated in the context of prison life) in which the state might conceivably have created a liberty interest for the benefit of the inmate. Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In the instant case, the plaintiff asserts that during a doctor's call-out on an unspecified date, he made a comment in the defendant's presence that, "it smells like some one didn't put on no deodorant", whereupon the defendant accused the plaintiff of being disrespectful and issued the plaintiff the referenced disciplinary report.[6] By admitting

---

[5] To the extent that the plaintiff asserts the claim that other defendants have engaged in the alteration and/or forgery of his medical records, the conclusion of the Court that this claim does not rise to the level of a constitutional violation is equally applicable to the other defendants.

[6] The affidavit of Tremika Brown does not mention the issuance of a disciplinary report. To the contrary, defendant Brown avers that she has seen the plaintiff on only two occasions and that during a doctor's visit with the plaintiff on May 5, 2009, the plaintiff became very aggressive and hostile and refused to be seen by the attending physician. Accordingly, defendant Brown notified security, and the plaintiff was removed from the examination area on that date. On the second occasion, on September 14, 2009, defendant Brown took the plaintiff's vital signs, which included his "pulse rate, respiration and blood pressure measurement", after which the plaintiff "became

to having made the referenced derogatory statement, however, the plaintiff arguably concedes that issuance of the report was justified. And in any event, the plaintiff has made no allegation that any punishment was in fact imposed in connection with the referenced disciplinary report or that such punishment resulted in an atypical and significant deprivation in the context of prison life. Accordingly, the plaintiff's claim relative to the alleged wrongful disciplinary report issued by defendant Brown fails to rise to the level of a constitutional violation and must be dismissed.

The plaintiff next complains that defendants Dr. Roundtree and nurses Lacour and Dodge administered improper medications to him on April 21 and May 17, 2009, respectively, which resulted in a serious adverse reaction and which has since caused him severe pain and medical complications. In this regard, in order to state a claim under the Eighth Amendment of improper or inadequate attention to medical needs, a prisoner must assert both that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." Estelle v. Gamble, supra; Johnson v. Treen, 759 F.2d 1236 (5th Cir. 1985). Whether the plaintiff has received the treatment or accommodation that he feels he should have is not the issue. Estelle v. Gamble, supra; Woodall v. Foti, 648 F.2d 268 (5th Cir. 1981). Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. Varnado v. Lynaugh, 920 F.2d 320 (5th Cir. 1991); Johnson v. Treen, supra. Rather, as stated in Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." The deliberate indifference standard sets a high bar to reach; the plaintiff must establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino v. Texas Dept. of Criminal Justice, 239 F.3d 752 (5th Cir. 2001).

Although the plaintiff asserts that the defendants administered improper medications on April

---

agitated and refused laboratory work ordered for him".

21 and May 17, 2009, and have failed to provide him with medical treatment thereafter, these assertions are not supported by the record. The defendants have produced medical records reflecting that much medical treatment and attention have been provided to the plaintiff, both before the referenced dates and thereafter, as well as the affidavits of defendants Roundtree, Lacour and Dodge regarding such treatment. This evidence reflects that between December 1, 2008, and April 21, 2009, the plaintiff requested medical attention no fewer than 15 times, complaining variously of dry eyes, irregularity, skin rashes, dry and cracked skin, athlete's foot, cold and sinus symptoms, a sore throat, stomach pain, and a traumatic injury to his wrist and foot. On each of these occasions, he was seen by LSP medical staff and was provided with medication and treatment. On April 21, 2009, the plaintiff reported to the infirmary with complaints of chest pain. When a chest x-ray and EKG were negative, Dr. Roundtree ordered injections of Toradol and Norflex, which were administered by defendant Christine Lacour. Although the plaintiff complained in the days following of pain resulting from these medications, his examinations on April 22, 23, 27, and May 7, 2009, were essentially unremarkable. In fact, Dr. Roundtree ordered a referral to the LSP mental health department on April 23, 2009, because of his repeated complaints. Finally, on May 17, 2009, the plaintiff was seen again at the infirmary by defendant Roundtree, with continuing complaints of abdominal pain. At that time, defendant Roundtree ordered x-rays, urinalysis, diagnostic testing, intravenous fluids, and additional medications (Reglan, Flagyl, Biaxin and Prilosec). The medication Reglan was administered through the plaintiff's I.V. tube by defendant Mary Dodge. Although the plaintiff has since made repeated and numerous complaints regarding abdominal pain and other symptoms which he attributes to these medications administered on April 21 and May 17, 2009, the voluminous medical documentation relative to these complaints reflects no basis for concluding that these medications in fact caused him harm of that, if so, the harm was intended by prison officials. The plaintiff has been seen by health care personnel on many many occasions with essentially normal objective examinations, and he has been repeatedly referred for evaluation by the mental health department for what have been characterized as "delusional" complaints. In addition, the

plaintiff has many times refused additional diagnostic testing, apparently based upon his belief that the defendants are trying to cause him harm. Notwithstanding, there is no indication from the record that the plaintiff's medical complaints have been ignored, that the defendants have intended to cause him harm, or that the defendants have exhibited deliberate indifference in any way to his serious medical needs.

Based on the foregoing, the Court concludes that the defendants are entitled to qualified immunity in connection with the plaintiff's claim of deliberate medical indifference. Although he has obviously been unhappy with the medical care which he has received at LSP, such unhappiness cannot, without more, form the basis for a claim under § 1983. Although he appears convinced that the defendants administered improper medications to him on April 21 and May 17, 2009, he offers no evidentiary support for this belief beyond his mere personal conviction. Although he points to alleged discrepancies in his medical records and in the pertinent logbooks relative to these and other dates, these discrepancies, in the Court's view, are minor and do not support the plaintiff's claim that the defendants have engaged in a massive conspiracy to cause him harm or to attempt to kill him. In short, his repeated statements of pure subjective belief in this regard, although perhaps heartfelt and earnestly held, are not enough to support a judgment in his favor. Instead, these assertions amount to only a weak and tenuous assertion of liability that is not sufficient to support a judgment in the plaintiff's favor. Little v. Liquid Air Corp., supra. Accordingly, the Court finds that the plaintiff has failed to make an evidentiary showing adequate to defeat the defendants' motions and that the plaintiff's claim of deliberate medical indifference should be dismissed.

Finally, the plaintiff makes repeated claims of retaliation and asserts that defendant Kevin Benjamin has orchestrated the above-referenced attempts to cause him harm and has masterminded the conspiracy in which all of the other defendants have been complicit. These assertions are entirely conclusory and are not supported by the record. All that the plaintiff has alleged relative to this claim is that defendant Benjamin has been a party-defendant to a case previously filed by the plaintiff before this Court and that on one occasion, on an unspecified date,

defendant Benjamin came down the plaintiff's cell tier and stated, in a loud voice, "I don't like people who file [lawsuits] or [administrative grievances]". This is an insufficient basis upon which to support liability. In this regard, the law is clear that the taking of action against an inmate because of the inmate's exercise of his constitutional rights is a violation of the inmate's constitutional rights. Ruiz v. Estelle, 679 F.2d 1115 (5th Cir.), opinion amended in part and vacated in part, 688 F.2d 266 (1982), cert. denied, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); Gibbs v. King, 779 F.2d 1040 (5th Cir.), cert. denied, 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 659 (1986). Specifically, prison officials are not allowed to retaliate against an inmate because of the inmate's exercise of his First Amendment right to file lawsuits or complain to supervisory officials about the alleged wrongful conduct of prison security officers. Id. An inmate's right to complain, however, is limited to the making of non-frivolous complaints involving the assertion of legitimate constitutional rights, Johnson v. Rodriguez, 110 F.3d 299 (5th Cir. 1997); see also Lewis v. Casey, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); Tighe v. Wall, 100 F.3d 41 (5th Cir. 1996); Woods v. Smith, 60 F.3d. 1161 at 1166 (5th Cir. 1995), cert. denied, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996). In addition, inasmuch as claims of retaliation are not favored, it is the plaintiff's burden to provide more than mere conclusory allegations of retaliation:

> To state a claim of retaliation an inmate must ... be prepared to establish that but for the retaliatory motive the complained of incident ... would not have occurred. This places a significant burden on the inmate.... The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.

Woods v. Smith, supra, 60 F.3d. at 1166.

In the instant case, the plaintiff's allegations regarding a retaliatory conspiracy are wholly conclusory. The plaintiff states only his subjective belief that defendant Benjamin is biased against the plaintiff because of the plaintiff's prior lawsuit, and the plaintiff provides neither facts nor a chronology of events from which a retaliatory motive may plausibly be inferred. The mere fact that defendant Benjamin may have stated on an unspecified date that he did not like inmates who filed lawsuits or grievances, and the mere fact that the defendant may have been named as a defendant

in a prior lawsuit filed by the plaintiff do not support an inference that the defendant has since engaged in a massive retaliatory conspiracy to cause the plaintiff's death. Accordingly, this claim is subject to dismissal as well.[7]

The plaintiff also seeks to invoke the supplemental jurisdiction of this court with regard to his claims arising under state law. District courts, however, may decline to exercise supplemental jurisdiction over a claim or claims if the claim raises a novel or complex issue of state law, if the claim substantially predominates over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, inasmuch as the Court recommends dismissal of the plaintiff's federal claims asserted herein, it is appropriate that the Court decline to exercise supplemental jurisdiction over the plaintiff's state law claims.

## RECOMMENDATION

It is recommended that the plaintiff's claims asserted against defendants Parnell Davis and Anthony Johnson, Sr., be dismissed for failure of the plaintiff to serve these defendants within 120 days as mandated by Fed. R. Civ. P. Rule 4(m). It is further recommended that the Court decline to exercise supplemental jurisdiction over the plaintiff's state law claims, that the defendants' motions for summary judgment, rec.doc.nos. 85, 100 and 107, be granted, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on February 23, 2011.

**MAGISTRATE JUDGE DOCIA L. DALBY**

---

[7] The Court notes that, in recent pleadings, the plaintiff has complained that the defendants have not assisted him in his efforts to be released from LSP and to be relocated to a half-way house. This claim was not asserted in the plaintiff's original Complaint and relates to events occurring long after the filing of same. Accordingly, the Court does not interpret these allegations to amount to an amendment of the plaintiff's Complaint.